IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

|  |  |  |
|---|---|---|
| | Plaintiff, | OPINION and ORDER |
| v. | | |
| | | 18-cv-797-jdp |
| ROCKAUTO, LLC, | | |
| | Defendant. | |

---

Plaintiff Equal Employment Opportunity Commission (EEOC) brought this suit on behalf of charging party Glenn McKewen under the Age Discrimination in Employment Act (ADEA). A jury found that defendant RockAuto, LLC violated the ADEA when it refused to hire McKewen. Dkt. 153.

This opinion and order addresses remedies. Front pay and injunctive relief are equitable remedies to be decided by the court, but the parties stipulated that the court would also determine back pay and mitigation after trial. Dkt. 133, at 1. Accordingly, the court must decide four issues: (1) whether McKewen is entitled to back pay and front pay; (2) the amount of any pay; (3) whether McKewen failed to mitigate his damages; and (4) whether the court should issue a permanent injunction against RockAuto. The parties agree that McKewen should receive prejudgment interest for any back pay that the court awards.

For the reasons explained below, the court will award McKewen a total of $123,936.15 in back pay and prejudgment interest, and it will grant EEOC's request for a permanent injunction. The court will deny EEOC's request for front pay.

BACKGROUND

RockAuto is an online retailer of motor-vehicle parts and accessories. Glenn McKewen applied for a position with RockAuto as a supply chain manager on October 24, 2016, when he was 64 years old. When McKewen applied, Catherine Cahoon screened all job applications, and RockAuto general manager James Taylor made the final hiring decisions. Cahoon screened McKewen's application using a standardized score sheet. McKewen's resume stated that he had received a master's degree in marketing and supply chain management and a bachelor's degree in business administration, but it did not say when he received these degrees. Cahoon emailed McKewen to request that information; McKewen replied that he had received his bachelor's degree in 1978 and his master's degree in 2003. Cahoon gave McKewen's application a score of eight points, which was not high enough to automatically advance in the hiring process. RockAuto sometimes allowed applicants with lower scores to proceed in the hiring process on a discretionary basis, a process RockAuto calls a "Jim Pass." But RockAuto did not give McKewen a Jim Pass, rejecting his application based on his score.

McKewen continued to look for work after he was rejected by RockAuto. He obtained work with Milwaukee Electronics from February 2017 to October 2017, earning $44,060.94 in wages. He continued to apply for jobs until late 2018, when he stopped looking for work.

ANALYSIS

A.  **Back pay**

The ADEA permits an award of back pay (that is, the wages and benefits that McKewen would have received had he been hired) if the plaintiff has proven age discrimination. *Barton v. Zimmer, Inc.*, 662 F.3d 448, 545 (7th Cir. 2011). As the plaintiff, EEOC has the initial burden

of establishing the back pay amount, then the burden "shifts to the defendant to show that the plaintiff failed to mitigate damages or that damages were in fact less than the plaintiff asserts." *Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1044 (7th Cir. 1994). A claim for back pay must be supported by evidence, but it does not have to be calculated with "unrealistic exactitude." *Stewart v. Gen. Motors Corp.*, 542 F.2d 445, 452 (7th Cir. 1976).

EEOC seeks $167,991 in back pay for McKewen, plus $19,385 in prejudgment interest. Dkt. 168, at 15. RockAuto disputes five issues: (1) whether McKewen failed to mitigate his damages; (2) the time period for which McKewen is entitled to back pay; (3) the hourly wage that should be used to calculate McKewen's lost wages; (4) the value of the benefits McKewen would have received from RockAuto had he been hired; and (5) the amount that McKewen's damages should be offset to reflect the wages and benefits that he received from Milwaukee Electronics. The court addresses these arguments separately.

### 1. Mitigation

To establish the affirmative defense that McKewen failed to mitigate his damages, RockAuto has the burden to establish two elements: (1) McKewen failed to exercise reasonable diligence to mitigate his damages; and (2) there was a reasonable likelihood that McKewen might have found comparable work by exercising reasonable diligence. *Stragapede v. City of Evanston, Ill.*, 865 F.3d 861, 868 (7th Cir. 2017); *Hutchinson*, 42 F.3d at 1044.

At his deposition, McKewen testified that after he was terminated from Milwaukee Electronics, he applied for at least four jobs per week through June 30, 2018, when he stopped regularly applying for work and changed his LinkedIn profile to state that he had retired as of January 2018. He also testified that he attended a job interview with Master Lock on July 17, 2018, but he was not hired. And he testified that about three or four months after the July 17

3

interview, Master Lock emailed him about another opening and invited him to submit his resume. He did so, but he did not receive an interview for the position.

RockAuto concedes that McKewen mitigated his damages through June 30, 2018, but it contends that he did not mitigate beyond that date. RockAuto addresses most of its arguments toward the first element of the defense, contending that McKewen failed to exercise reasonable diligence past June 30 because he was no longer looking for work beyond that date. EEOC contends that McKewen continued to look for work through November 21, based on his testimony that he had emailed his resume to Master Lock three or four months after his July 17 interview.

RockAuto must show that McKewen had a reasonable likelihood of finding comparable work if he had continued his efforts. *E.E.O.C. v. Gurnee Inn Corp.*, 914 F.2d 815, 818–19 (7th Cir. 1990). RockAuto's chief argument on this point is that McKewen "was able to obtain employment relatively quickly with Milwaukee Electronics" in 2017 after RockAuto rejected his application. Dkt. 167, at 5. But RockAuto doesn't challenge McKewen's testimony that he applied for multiple jobs per week between October 2017 and June 2018 with no success, and it offers no reason to believe that McKewen's continued efforts would have been successful, such as "evidence concerning the availability of comparable jobs," *Gurnee Inn*, 914 F.2d at 818. *See also Gracia v. Sigmatron Int'l, Inc.*, 130 F. Supp. 3d 1249, 1257 (N.D. Ill. 2015) (no failure to mitigate where employer "offer[ed] *no* evidence on the availability of work comparable to [the] lost position") (emphasis in original). As the *Gracia* court noted, "[I]t is appropriate to place the burden of proof on the employer to tamp-down damages because the only reason [the court is considering mitigation] is that the *employer* has engaged in illegal discrimination." *Id.*

(emphasis in original). RockAuto has failed to meet its burden on the second element, so its argument that McKewen failed to mitigate his damages after June 30, 2018, fails.

### 2. Time period

The purpose of back pay is to make the victim of discrimination whole, so there is "a strong presumption" that a victim of discrimination is "entitled to a back pay award on the basis of what [he] would have earned absent the discrimination." *E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1579 (7th Cir. 1997). Back pay is typically calculated for the time period between the adverse employment action and the date of the judgment. *See, e.g., Gracia*, 130 F. Supp. 3d at 1255 (citing 7th Cir. Pattern Civil Jury Instruction 3.11 (2015)). But the calculation is a bit more complicated in this case.

The parties disagree about both the start date and the end date for McKewen's back pay. As for the start date, EEOC contends that McKewen is entitled to back pay beginning on November 7, 2016, "the first full pay period after he was rejected" after submitting his application on October 24. Dkt. 168, at 8. But the question is when McKewen would have started earning wages and benefits from RockAuto had he been hired, not when RockAuto rejected his application. EEOC presents no evidence regarding how much time typically elapsed between when applicants submitted their applications and when they began work. Nor does EEOC address the fact that if McKewen had received a Jim Pass, he would still have been required to complete a test regarding his knowledge of auto parts and to participate in an in-person interview before receiving a job offer.

The court agrees with RockAuto that November 28 would have been a more realistic start date for McKewen. As RockAuto notes, comparator Emily Mei applied around the same time that McKewen applied, and more than five weeks passed between her application

submission and her hire date. EEOC doesn't address this evidence in its response brief. *See id.* So the court will calculate McKewen's back pay beginning on November 28, which is likewise about five weeks after McKewen applied.

As for the end date, EEOC doesn't seek back pay through the date of judgment; rather, it seeks back pay through only November 21, 2018, around the time that McKewen made his last job inquiry by sending his resume to Master Lock. EEOC doesn't explain why it requests back pay through only that date, but the court infers that McKewen was not actively looking for work and not genuinely interested in working beyond that date.

The court concludes that McKewen is entitled to back pay from November 28, 2016, through November 21, 2018.

### 3. Hourly wage

The parties agree that the minimum pay rate for supply chain managers was $31 per hour when McKewen applied and that it was increased to $36 per hour in May 2017. And they agree that the maximum pay rate was $42 per hour until May 2017, when it was increased to $50 per hour. But the parties disagree on the rate McKewen would have been paid had he been hired.

EEOC contends that McKewen's damages should be based on the maximum pay rate because of his extensive experience. But EEOC adduces no evidence that any supply chain managers were hired at more than the minimum rate of pay. EEOC says that RockAuto's offer letter to comparator Alison Widner, who applied while she was still in college, shows that "even inexperienced [supply chain managers] earned up [to] $42 per hour." Dkt. 168, at 2. But the offer letter explicitly stated that Widner's starting pay would be $31 per hour; it said only that supply chain managers "have the ability to grow within the Supply Chain Manager role and

pay range, from $31 to $42/hour." Dkt. 37-29, at 15. EEOC also cites a declaration from EEOC investigator Jacob Sobiesczyk, who says that according to notes he took during EEOC's investigation of McKewen's age-discrimination charge, a RockAuto employee said that the pay range for supply chain managers was $36 to $50 per hour. Dkt. 164, ¶ 12. But again, this is not evidence that RockAuto paid a *starting* wage above the minimum.

EEOC says that this disagreement is an ambiguity that should be resolved against RockAuto. *See, e.g.*, *Stewart*, 542 F.2d at 452 ("[A]mbiguities in what an employee . . . would have earned but for discrimination should be resolved against the discriminating employer."). But EEOC hasn't identified any ambiguity. EEOC has adduced no evidence that suggests that any supply chain managers were hired at an initial pay rate above the bottom of the pay range. The court concludes that McKewen would have been hired at the minimum pay rate. And EEOC doesn't contend that McKewen would have received a raise after his hire date (other than across-the-board increases to the minimum pay rate). So the court will calculate McKewen's lost wages based on $31 per hour through April 2017 and $36 per hour afterward.

Using these pay rates and the beginning and end dates discussed above, the court calculates McKewen's lost wages as follows:

November 28 to December 31, 2016: five 40-hour weeks at $31 per hour = $6,200

January 1 to April 30, 2017: 17 40-hour weeks at $31 per hour = $21,080

May 1 to December 31, 2017: 35 40-hour weeks at $36 per hour = $50,400

January 1 to November 21, 2018: 46 40-hour weeks at $36 per hour = $66,240

Total lost wages: $143,920.

### 4.  Benefits from RockAuto

The parties agree that McKewen is entitled to the value of the benefits that McKewen would have received from RockAuto had he been hired. Both sides agree that EEOC's proposed calculation methods are appropriate in principle, although they disagree slightly about the amount of benefits to which McKewen is entitled. The parties divide the lost benefits to which McKewen is entitled into two categories: (1) legally required benefit payments that RockAuto would have paid on McKewen's behalf toward Social Security, Medicare, federal and state unemployment insurance, and workers' compensation; and (2) payments that RockAuto would have made toward McKewen's health-insurance premiums. Although other calculation methods might better approximate the value of McKewen's lost benefits, *see, e.g., Barnes v. State of Wis. Dep't of Corr.*, No. 18-cv-105-jdp, 2020 WL 94799, at *3–4 (W.D. Wis. Jan. 8, 2020) (calculating lost benefits on plaintiff's actual replacement costs or expenses, not on what employer would have paid), both sides propose the same calculation methods, so the court will apply those methods.

As for the legally required benefit payments, both parties rely on the same June 2018 publication from the United States Bureau of Labor Statistics.[1] The publication states that as of March 2018, employers paid an average of 7.3 percent of wages for workers overall toward these benefit programs, and 7.4 percent of wages for sales and office workers. RockAuto relies on the 7.3 percent figure for workers overall, and EEOC relies on the 7.4 percent figure for sales and office workers. In its summary judgment briefing, RockAuto repeatedly stressed that the supply chain manager position had a sales focus. *See, e.g.,* Dkt. 22, at 13 (RockAuto looked

---

[1] Bureau of Labor Statistics, *News Release* 4 (June 8, 2018), https://www.bls.gov/news.release/archives/ecec_06082018.pdf.

for direct customer-service experience, not managerial experience). So the court will apply the 7.4 percent figure to McKewen's $143,920 in lost wages, which yields $10,650.08 in legally required benefits.

As for the health-insurance premium payments that RockAuto would have made on McKewen's behalf, both parties rely on an exhibit from RockAuto's 30(b)(6) deposition stating that RockAuto provided a fixed contribution toward each employee's health insurance premium, regardless of which plan the employee chose or how many family members were covered.[2] According to the document, the monthly premium contributions for 2017 were $118.84, the 2018 contributions were $120.36, and the 2019 contributions were $127.44. The document does not state the monthly premium contribution for 2016. EEOC estimates the 2016 contribution by assuming that RockAuto increased its contribution by the same percentage from 2016 to 2017 as it did from 2017 to 2018. RockAuto doesn't explicitly address the issue, but it appears to assume that the document simply states the wrong years—in other words, RockAuto uses the stated 2017 figure for 2016, the stated 2018 figure for 2017, and the stated 2019 figure for 2018. In any event, RockAuto's proposed damages calculation yields slightly *higher* damages for McKewen on this point, so the court will resolve the ambiguity in McKewen's favor by using RockAuto's figures.

For 2016, McKewen would have received one month of contributions, or $118.84. For 2017, McKewen would have received 12 months of contributions at $120.36 per month, or $1,444.32. And for 2018, McKewen would have received 11 months of contributions at $127.44 per month, or $1,401.84. The total value of these contributions is $2,965.

---

[2] This document was not filed on the docket, but EEOC submitted it as trial exhibit 71. *See* Dkt. 127, at 8.

At this point in the tabulation, McKewen is entitled to $143,920 in lost wages, $10,650.08 in lost legally required benefit payments, and $2,965 in lost premium contributions, a total of $157,535.08 in back pay.

### 5. McKewen's earnings and benefits at Milwaukee Electronics

The parties agree that McKewen's back pay must be offset by the value of the wages and benefits that he received from Milwaukee Electronics. Both sides rely on McKewen's 2017 W-2 form from Milwaukee Electronics, Dkt. 98-8.

The parties agree that McKewen's damages should be offset by the $44,060.94 he received in compensation from Milwaukee Electronics, which includes $42,786.87 in wages and $1,274.07 in 401(k) contributions. And as with McKewen's back pay, they agree that his damages should be offset by: (1) a percentage of the compensation he received from Milwaukee Electronics to reflect the amount of Milwaukee Electronics' legally required benefit payments; and (2) the amount of Milwaukee Electronics' contributions toward McKewen's health-insurance premiums.

As for the legally required benefit payments, both sides propose the same percentages as above. The court will again use the 7.4 percent figure for sales and office workers. This yields an offset of $3,260.51.

As for the health-insurance premium contributions, the parties dispute the amount that Milwaukee Electronics contributed. Box 12b of McKewen's W-2 indicates with code DD that the total cost of his employer-sponsored health coverage was $7,241.02.[3] Internal Revenue Service guidance on code DD states that "the amount reported should include both the portion

---

[3] *See* Internal Revenue Service, *General Instructions for Forms W-2 and W-3* 20 (2017), https://www.irs.gov/pub/irs-prior/iw2w3--2017.pdf (defining code DD).

paid by the employer and the portion paid by the employee."[4] Nevertheless, RockAuto contends that McKewen's damages should be offset by the full cost of McKewen's health coverage for two reasons: (1) EEOC failed to provide a computation of McKewen's damages before trial; and (2) this figure likely understates the value of the benefits McKewen received from Milwaukee Electronics because he testified at his deposition that he also received dental and vision insurance. But the court addressed the first reason at the final pretrial conference, declining to sanction EEOC for failing to compute damages and urging the parties to confer and stipulate to the value of McKewen's benefits. As for the second reason, IRS guidance states that the value of dental and vision insurance may be included in box 12b under code DD.[5] RockAuto hasn't adduced any evidence that Milwaukee Electronics did not include the value of McKewen's dental and vision insurance in this figure.

RockAuto hasn't offered a good reason to assume that Milwaukee Electronics paid the full cost of McKewen's health coverage. Based on the available evidence, and bearing in mind the principle that ambiguities should be resolved against RockAuto, the court concludes that EEOC's proposed calculation method is the best way to estimate the value of what Milwaukee Electronics paid toward McKewen's health coverage. EEOC's calculation method treats the health-insurance premium contributions as a percentage of his compensation (not including legally required benefits), assuming that Milwaukee Electronics and RockAuto would have paid the same percentage of compensation toward McKewen's health coverage. For 2017, the year

---

[4] Internal Revenue Service, *Form W-2 Reporting of Employer-Sponsored Health Coverage*, https://www.irs.gov/affordable-care-act/form-w-2-reporting-of-employer-sponsored-health-coverage (last accessed August 3, 2021).

[5] *See id.*

11

that McKewen was employed by Milwaukee Electronics, McKewen is entitled to $71,480 in compensation from RockAuto. The $1,444.32 in premium contributions to which he is entitled for that year is about 2.02 percent of his compensation. Applying the same 2.02 percentage to McKewen's $44,060.94 in compensation from Milwaukee Electronics yields $890.03, so the court will offset his damages by that amount to reflect Milwaukee Electronics' health-insurance premium contributions.

McKewen's $157,535.08 in back pay will be offset by the $44,060.94 he received from Milwaukee Electronics in compensation, the $3,260.51 he received in legally required benefits, and the $890.03 he received in health coverage contributions, a total offset of $48,211.48. This yields an adjusted back-pay award of $109,323.60.

## B. Front pay

The ADEA allows the court to award "such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter." 29 U.S.C. § 626(b). Both sides assume that this provision allows the court to award reinstatement or front pay (that is, future lost wages and benefits), so the court will do the same. *See Barton*, 662 F.3d at 454 (open question whether ADEA allows front pay, but reasoning in Supreme Court Title VII case "suggests that front pay is an available equitable remedy under the ADEA in the right circumstances, in lieu of reinstatement, just as it is under Title VII") (citing *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001)). Although McKewen testified at trial that he would accept a position with RockAuto if it were offered, EEOC contends that reinstatement is not feasible. Instead, EEOC seeks front pay for McKewen for a period of four years from the date of the judgment. In support of this request, EEOC says only that four years "is a reasonably certain period during which McKewen could have been expected to continue to work at RockAuto, given his

12

testimony that he wishes to continue to work but gave up applying for jobs because he stopped receiving any responses." Dkt. 163, at 11.

As with back pay, the purpose of front pay (or reinstatement) is to make McKewen whole for the discrimination he has suffered. *Pollard*, 532 U.S. at 851. Such relief is awarded under the district court's discretion. *Hybert v. Hearst Corp.*, 900 F.2d 1050, 1056 (7th Cir. 1990). It is difficult to square EEOC's request for front pay with its limited request for back pay, as EEOC seeks no damages whatsoever for the period between November 21, 2018, and the judgment. In other words, EEOC appears to believe that McKewen would be made whole regarding back pay with an award of damages through the end of his job search; EEOC doesn't explain why forward-looking relief would be appropriate under these circumstances.

The court concludes that neither front pay nor reinstatement is required to make McKewen whole, so the court will decline to order either remedy.

## C. Prejudgment interest

The decision to award interest is a matter within the district court's discretion, but it is presumptively available for violations of federal law. *Pickett v. Sheridan Health Care Ctr.*, 813 F.3d 640, 646 (7th Cir. 2016). The parties agree that McKewen should receive simple interest of four percent per year, calculated on an annual basis. So the court will award McKewen $13,883.73 in prejudgment interest through June 1, 2021, with additional interest accruing at $364.41 per month through the date of this order, for a total prejudgment interest award of $14,612.55.

## D. Permanent injunction

EEOC also asks the court to issue a permanent injunction against RockAuto under the ADEA's authorization of equitable relief, 29 U.S.C. § 626(b). Before granting EEOC's request

13

for an injunction, the court must consider whether RockAuto's "discriminatory conduct could possibly persist in the future." *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 842 (7th Cir. 2013) (quoting *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 864 (7th Cir. 2001)).

As an initial matter, RockAuto contends that EEOC's request for injunctive relief is moot unless McKewen is reinstated. But the cases on which RockAuto relies involve individual plaintiffs, not EEOC. *See, e.g.*, *Tennes v. Mass. Dep't of Revenue*, 944 F.2d 372, 382 (7th Cir. 1991). Unlike an individual plaintiff, EEOC may "seek relief on behalf of individuals beyond the charging parties who are identified during the investigation." *E.E.O.C. v. United Parcel Serv.*, 94 F.3d 314, 318 (7th Cir. 1996). "[I]njunctive relief is appropriate even where the [EEOC] has produced no evidence of discrimination going beyond the particular claimant's case." *Ilona of Hungary*, 108 F.3d at 1578. EEOC proved at trial that RockAuto discriminated against McKewen on the basis of age, so EEOC is entitled to injunctive relief "unless [RockAuto] can show that [McKewen's] case is somehow different from the norm." *AutoZone*, 707 F.3d at 840–41 (internal quotation marks omitted).

EEOC requests injunctive relief in four categories for a period of three years:

1. Prohibition on age discrimination in hiring

   RockAuto shall not take the age of an applicant into consideration during its hiring process, or otherwise discriminate against applicants on the basis of their age.

2. Adoption of anti-discrimination policy

   a. RockAuto shall adopt an anti-discrimination policy that prohibits age discrimination in its hiring process and establishes a procedure to receive and investigate complaints of discrimination.

   b. RockAuto shall provide a copy of such policy to EEOC within thirty (30) days of the entry of the Court's order.

14

    c. RockAuto shall maintain copies of any age discrimination complaints, internal investigations, and related records for the duration of the Court's Order, and longer if required by the governing recordkeeping regulations.

3. Implementation of anti-discrimination training

    a. Within ninety (90) days of the entry of the Court's Order, RockAuto shall provide all employees involved in hiring decisions, including all individuals who review applications, participate in interviews, or hold any decision-making authority with regard to hiring, with at least one (1) hour of training on the ADEA and RockAuto's anti-discrimination policy to be conducted either in-person or by live video conferencing.

    b. RockAuto shall provide this training once per year for the duration of the Court's Order.

    c. RockAuto shall provide EEOC with the name and qualifications of the person administering the training and the proposed training materials at least thirty (30) days before each administration of the training.

    d. RockAuto shall provide EEOC with a certification listing the individuals who attended the training, including names and titles, within seven (7) days after each administration of the training.

4. Assurance of compliance

    a. The Court's injunction shall be for three (3) years.

    b. Each year, on the anniversary of the entry of this Order, RockAuto shall file a certificate of compliance with the injunction. If RockAuto has not fully complied with one or more provisions of the Order, the signatory of the report shall indicate what shortcomings have occurred and shall outline a plan to assure immediate compliance.

    c. EEOC will give RockAuto fourteen (14) days' notice of any alleged noncompliance with the terms of this Order before initiating enforcement actions under it. If RockAuto has not remedied the alleged non-compliance or has not satisfied the EEOC that it has complied with the Decree at the end of that period, the EEOC may apply to the Court for appropriate relief. These dispute resolution

> proceedings do not apply to those cases where there is a
> need to seek immediate or other extraordinary relief from
> the Court.

Dkt. 163, at 15–18.

EEOC's first category of relief, as drafted, requires RockAuto to obey the law regarding age discrimination. Such requests are generally disfavored as overly broad and vague. *AutoZone*, 707 F.3d at 841 (collecting cases). These "concerns are rooted in basic principles of due process" because such injunctions subject defendants to contempt proceedings for conduct that is unrelated to the litigation and that is defined in indefinite terms. *Id.* at 842. The court will revise the proposed first category of relief to include only the substantive component.

The EEOC's remaining categories of injunctive relief are specific and directly related to the conduct at issue in this lawsuit. RockAuto offers no objections to any of EEOC's specific requests. It makes the general objection that a permanent injunction is unnecessary because RockAuto "already prohibits discrimination, includes a link to the 'Equal Opportunity is the Law' poster . . . on its employee Wiki, and is willing to provide more training to its human resource professionals related to anti-discrimination laws." Dkt. 169, at 13–14. RockAuto also says that it has stopped asking applicants for their graduation years.

The court is not persuaded that RockAuto has already adequately remediated its age discrimination problem without an injunction. RockAuto already had a nominal nondiscrimination policy when RockAuto rejected McKewen's application. RockAuto employee Catherine Cahoon testified at trial that RockAuto included a link to generic nondiscrimination information in its employee handbook, and she said that she already knew that it is illegal to discriminate against an applicant on the basis of age. Dkt. 158, at 26:11–22. And even if RockAuto has stopped asking applicants for their graduation years, it's likely that

most applicants would voluntarily include that information on their resumes, an assumption that is supported by the numerous applications the court has reviewed in this case. RockAuto says that it is willing to voluntarily provide unspecified antidiscrimination training to its employees. But a vague promise to provide some additional training in the future is not enough to meet RockAuto's burden to show that it will not continue to discriminate without an injunction, *AutoZone*, 707 F.3d at 840–41. The court will grant EEOC's request for injunctive relief, substantially in the form proposed by EEOC.

A proposed form of injunction is attached to this opinion and order. The parties have 14 days to submit any objections to the form of the order for injunction. After considering any objections, the court has will enter the injunction in a separate document as required under Rule 65 of the Federal Rules of Civil Procedure.

## ORDER

IT IS ORDERED that

1. Glenn McKewen is awarded $109,323.60 in back pay and $14,612.55 in prejudgment interest.

2. Plaintiff Equal Employment Opportunity Commission's request for injunctive relief, Dkt. 163, is GRANTED.

3. A proposed injunction is attached; the parties have 14 days to submit any objections to the proposed injunction.

Entered August 9, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge